(No. 21685.—

SAM J. PORTER, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(THE BURROUGHS ADDING MACHINE COMPANY, Plaintiff in Error.)

*Opinion filed April 22, 1933.*

John E. Cassidy, for plaintiff in error.

Hardy, Hardy & Hardy, for defendant in error.

Mr. Justice DeYoung delivered the opinion of the court:

Sam J. Porter, in an application filed with the Industrial Commission, charged that he suffered an accidental injury while employed by the Burroughs Adding Machine Company, and he asked the adjustment of compensation for the injury. The arbitrator found no accidental injury to the petitioner which arose out of and in the course of. his employment and denied compensation. On review, the Industrial Commission heard additional evidence and sustained the arbitrator's decision. The circuit court of Peoria county, upon the return to a writ of *certiorari,* found that the petitioner suffered an accidental injury and that it arose out of and in the course of his employment. The court accordingly set aside the decision of the commission and remanded the cause with directions to ascertain and fix the amount of compensation to which the petitioner was entitled. Upon the employer's petition, this court granted a writ of error.

The Burroughs Adding Machine Company, a corporation, manufactures and sells book-keeping and adding machines. Sam J. Porter, the defendant in error, was a salesman employed by the company's branch at Peoria. From

July 8 to 11, 1930, the company conducted at Springfield a school offering instruction in the operation of its machines, and on July 12, held at Peoria a conference of its officers and employees. The defendant in error, obeying instructions theretofore given him, was present at the sessions of the school and later at the conference.

Upon the conclusion of his work at Springfield late in the afternoon of July 11, 1930, the defendant in error and J. A. McCoy, another employee of the company, departed for Peoria. About half an hour after the train left Springfield, and while it was in motion, a sudden lurch of the car in which the defendant in error was riding caused a bundle to fall from the parcel rack above the seat he occupied. The bundle struck him on the head at the moment he attempted to remove, by means of a toothpick, a seed wedged between two of his teeth. The defendant in error was thrown forward and the toothpick was driven into his gums and jawbone. His gums started to bleed. He washed his mouth with an antiseptic and applied ice water to his gums, but the latter continued to bleed and began to swell. After his arrival at Peoria he went to a hotel, remained there during the night and attended the conference at the company's office in the morning. He informed his superintendent of the accident and in the afternoon returned to his home in Galesburg. On the next day he consulted a dentist who found not only a laceration on the right side of the jaw between the lower cuspid and the first bicuspid, but also a red spot opposite the laceration. The dentist treated his gums and later extracted some teeth.

Nine days after his injury, the defendant in error consulted a physician. The patient had at the time a temperature of 101 degrees, his gums were swollen, his teeth were sensitive, and there was an infection at their roots involving the bone of the lower jaw. The following day he went to a hospital in Galesburg and remained there until the twenty-fifth day of August. He was later attended in a

Chicago hospital during two periods, the first of two weeks and the second of five days. Some of the teeth in his lower jaw were loose and all were extracted. An abscess formed on the chin and there was pus in the sinus. Incisions were made in the neck and chin and drainage tubes were inserted. Pus exuded from the mouth and neck. The jaw-bone was infected on both sides. After finally leaving the hospital, the defendant in error resumed his employment, but was able to work only two-thirds of the time, and was obliged to rest each day. He continued to lose weight and energy. His expenditures for drugs, hospital charges and medical services were approximately $2000. No evidence was offered by or on behalf of the plaintiff in error.

The contentions of the plaintiff in error are that the accident was not shown to have its origin in the employment of the defendant in error; that there was no causal connection between the accident and the subsequent infection and disability; that incompetent testimony was admitted and that the circuit court erred in setting aside the decision of the Industrial Commission.

An accidental injury to be within the provisions of the Workmen's Compensation act must have had its origin in some risk of, or reasonably incidental to, the employment. (*Porter Co.* v. *Industrial Com.* 301 Ill. 76; *City of Chicago* v. *Industrial Com.* 292 id. 406; *United Disposal Co.* v. *Industrial Com.* 291 id. 480). The controlling factor in determining whether an accidental injury arose out of and in the course of the employment is whether the employee was in the sphere of his duty when the accident occurred. (*Schafer* v. *Industrial Com.* 343 Ill. 573; *Schweiss* v. *Industrial Com.* 292 id. 90). There must be a causal relation between the work or what is done incidental to it and the injury that is suffered. (*Schafer* v. *Industrial Com.* 343 Ill. 573; *Central Illinois Public Service Co.* v. *Industrial Com.* 291 id. 256; *Becker Asphaltum Roofing Co.* v. *Industrial Com.* 333 id. 340; *Schweiss* v. *Industrial Com.* 292

id. 90). A traveling salesman, in the performance of his duties, may avail himself of the services of a common carrier. (*Solar-Sturges Manf. Co.* v. *Industrial Com.* 315 Ill. 352; *Porter Co.* v. *Industrial Com.* 301 id. 76). An employee while engaged in the work of his employer may do · those things which are necessary to his health and comfort, even though they are personal to himself, and such acts will be considered incidental to the employment. (*Vulcan Detinning Co.* v. *Industrial Com.* 295 Ill. 141; *Steel Sales Corp.* v. *Industrial Com.* 293 id. 435; *McLauchlan* v. *Anderson,* 4 B. W. C. C. 376). The defendant in error had gone to Springfield in the service of his employer; he had performed the duties assigned to him in that city, and, in obedience to his employer's instructions, was bound for Peoria to attend a conference there the following morning. The interurban railway train was a proper means of transportation. The lurching of the car in which the defendant in error rode was one of the risks incidental to his employment; and he might properly, while aboard the car, attempt to remove a seed which had lodged between two of his teeth.

Prior to the accidental injury, neither the gums nor the teeth of the defendant in error were infected and they caused him no pain. The puncture of his gums by the toothpick, on the contrary, was followed by bleeding, pain and localized infection. One of the doctors testified that, in his opinion, the inflammation of the marrow of the bone was caused by the puncture. Other testimony tended to show that the impaired condition of the jaw, gums and teeth was the result of the accident. There was no countervailing testimony and the evidence introduced was sufficient to justify the inference that the cause of the disability was the accidental injury. *American Mutual Liability Ins. Co.* v. *Industrial Com.* 342 Ill. 605; *Cockrell* v. *Industrial Com.* 327 id. 438; *Chicago and Alton Railroad Co.* v. *Industrial Com.* 310 id. 502.

A physician's answer to a hypothetical question is the testimony which the plaintiff in error asserts was incompetent. The puncture of the gums and other related facts shown by the testimony were recited and the inquiry was whether the condition which the witness found on July 20, 1930, could have been caused by the puncture. An objection was interposed, not that the question omitted elements of the case, but that it was incompetent. The answer was that the condition of the gums was the result of the puncture wound. Although the answer was not strictly responsive, it is not apparent how it was prejudicial. The physician testified as an expert witness and it was immaterial whether he expressed the opinion that the injury was the cause, or was sufficient to cause, or might have caused, the condition. The answer was merely the opinion of the witness upon a state of facts assumed to be true. It still remained for the arbitrator, the commission and the circuit court successively to determine the facts. *Chicago Union Traction Co.* v. *Roberts,* 229 Ill. 481; *City of Chicago* v. *Didier,* 227 id. 571; *Illinois Central Railroad Co.* v. *Latimer,* 128 id. 163; *Louisville, New Albany and Chicago Railway Co.* v. *Shires,* 108 id. 617; *City of Decatur* v. *Fisher,* 63 id. 241.

The contention that the circuit court erred in setting aside the Industrial Commission's decision remains to be considered. Under the Workmen's Compensation act, the circuit court has the power to review all questions of law and fact presented by the record, and if it determines that the Industrial Commission's findings of facts are contrary to the manifest weight of the evidence, it is the court's duty to set aside the decision of the commission. (*Peabody Coal Co.* v. *Industrial Com.* 349 Ill. 160; *Dornblaser* v. *Industrial Com.* 349 id. 61; *Atlas Linen Supply Co.* v. *Industrial Com.* 348 id. 69; *Long* v. *Industrial Com.* 347 id. 250; *Berry* v. *Industrial Com.* 335 id. 374). If the facts found in the proceedings before the commission are sufficient, the

court may enter such a decision as is justified by the law or remand the cause to the commission for further proceedings. In case the latter course should be adopted, the court may state the questions requiring a further hearing and give such other instructions as may be proper. (Section 19, sub-section (f) Workmen's Compensation act, Cahill's Stat. 1931, pp. 1414, 1415; Smith's Stat. 1931, pp. 1451, 1452). In this case, the circuit court remanded the cause, not for a further hearing generally, but with directions to ascertain the amount of compensation to which the defendant in error was entitled. The order of the circuit court was therefore final.

The direct and positive evidence introduced in behalf of the defendant in error justified the inference that he suffered an accidental injury which arose out of and in the course of his employment. Bleeding, swelling and infection followed the puncture of his gums, and treatment by a dentist, a physician and subsequently at two hospitals became necessary. The evidence shows that the impaired physical condition of the defendant in error was the result of the injury. No countervailing evidence was offered by the plaintiff in error. The testimony of unimpeached witnesses, not contradicted by positive testimony or by circumstances, and not inherently false or improbable, may not be rejected. (*Kelly* v. *Jones,* 290 Ill. 375; *Larson* v. *Glos,* 235 id. 584). The circuit court was therefore justified in setting aside the decision of the Industrial Commission. *Cruzan* v. *Industrial Com.* 350 Ill. 407; *Chicago and Northwestern Railway Co.* v. *Industrial Com.* 341 id. 131; *Standard Oil Co.* v. *Industrial Com.* 339 id. 252; *Berry* v. *Industrial Com.* 335 id. 374.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*