Emil Benkendorf, Plaintiff-Appellant, v. Floyd Seemann, Defendant-Appellee.

### Gen. No. 11,215.

Second District, Second Division.

May 6, 1959.

Released for publication May 22, 1959.

Hamer, Carroll, & Leali, of Woodstock, for plaintiff-appellant.

C. Russell Allen, of Woodstock (James Berner, of counsel) for appellee.

JUSTICE SOLFISBURG delivered the opinion of the court.

This is an action for damages for personal injuries sustained by the plaintiff, a forty-nine year old farmer, on October 23, 1953, as a result of a collision involving plaintiff's automobile and an automobile driven ·by the defendant. A trial before a jury resulted in a verdict of not guilty for the defendant. Judgment was entered on the verdict, the plaintiff's post-trial motion was denied, and the plaintiff perfected this appeal. No questions are raised on the pleadings.

The sole issue raised on this appeal is whether the verdict of the jury is contrary to the manifest weight of the evidence.

The occurrence took place on Friday, October 23, 1953, at about 8:45 o'clock p. m. According to the plaintiff, he departed alone from the farm on which he lived, sometime after 7:30 p. m. He drove his automobile from the farm to Woodstock, intending to visit friends at Franklinville, Illinois. Plaintiff testified that in Woodstock he turned onto a road known as Dean Street Road and proceeded south, traveling at a speed of approximately thirty miles per hour. Plaintiff testified that the lights were burning on his auto. After he approached the intersection of Dean Street Road, which runs in a general northerly and southerly direction, with Illinois Route 176, which runs in a general easterly and westerly direction, according to plaintiff's testimony, he gradually decreased his speed and brought his automobile to a stop at the Stop sign near the northerly entrance to the intersection, about 10 feet north of the pavement of Route 176. Plaintiff's testimony was that after he stopped at the Stop sign, he opened the left door of his car, at which time he saw a westbound auto pass on Route 176. Upon direct examination, plaintiff testified that he remained stopped "for more than five seconds" and then looked to the east and west and saw no other traffic. Plaintiff then proceeded in low gear, according to his testimony, turning into the eastbound lane of Route 176. After he had turned east on Route 176, he testified that he saw a reflection in his windshield whereupon the impact occurred. The next thing plaintiff remembered was awaking in the hospital.

The defendant, a twenty-three year old farmer, testified that he was familiar with the intersection of Dean Street Road and Route 176; that Route 176 is

411

a preferential highway and is some 19 ft. wide. According to the defendant's testimony, he was a regular member of a bowling team and at the time of the occurence was on his way to bowl with his team, driving alone in his own automobile. Defendant testified that he was proceeding easterly on Route 176 at approximately fifty miles per hour from the time he entered that thoroughfare from a gravel road some three miles west of Dean Street Road. He further testified that he had no recollection of seeing any traffic in either direction from the time he entered Route 176 until he saw plaintiff's automobile.

Although there was some conflict in the testimony as to its exact grade and dimensions, both parties and an independent witness testified that at 500 or 600 feet west of the intersection in question there began a "dip" in Highway 176. According to defendant's testimony, the first time he noticed the intersection of Dean Street Road with Route 176 was when he left the rise at the east edge of this so-called "dip," some 500 or 600 feet west of the intersection. Again, according to his testimony, defendant was between 400 to 500 feet from Dean Street Road when he saw a southbound automobile on that intersecting street, about 200 feet north of the north edge of Route 176. Defendant testified that plaintiff's automobile was then going between twenty to thirty miles per hour and was slowing down. Defendant further testified that the southbound automobile on Dean Street Road was seen by him when it reached the north edge of Route 176 at which time it was going very· slowly, about three to five miles per hour. At that time defendant was, by his testimony, between 75 and 100 feet away from where Dean Street Road intersects Route 176. Defendant maintained that the plaintiff's automobile was decelerating in a uniform manner from the time he first saw it until it neared the north edge of

Route 176. Defendant testified that when plaintiff's southbound vehicle reached the north edge of Route 176, it proceeded slowly across without stopping. Defendant's vehicle was then 70 to 100 feet away. At that moment, according to defendant, he applied his brakes and swerved to his right in an effort to avoid a collision. According to the defendant, plaintiff's vehicle continued south across Route 176 at three to five miles per hour, changing neither its speed nor direction until the vehicles collided. At the moment of impact defendant's automobile was about twelve feet south of the center line of Route 176, off the highway. At impact, plaintiff's automobile was south of the south edge of pavement of Route 176, its wheels just leaving the pavement, and it was headed south. The front part of defendant's automobile struck the plaintiff's auto in the center of the right side.

The evidence was undisputed that the roads were dry, that it was a clear night and that there was nothing to obstruct the view of either driver, with the possible exception of the "dip" in the highway to which we have previously referred.

The only eyewitnesses were the plaintiff and the defendant, each of whom was driving alone.

It is urged by the plaintiff that the testimony of his witnesses not contradicted by positive testimony or by circumstances, and not inherently false or improbable, may not be rejected; that the testimony on the part of the defendant is so inherently improbable that it should not be given credence; that the latter's testimony contains such omissions, discrepancies and improbabilities that it ought to be disregarded. On the other hand, it is defendant's position that his negligence and plaintiff's contributory negligence were in dispute; that these issues were proper matters for the jury to determine; and that since the evidence was conflicting, this court as a court of review should

413

not disturb the verdict where the findings of the jury were not clearly or palpably erroneous.

■ We have examined the record in this case with care. The plaintiff and the defendant were the only occurrence witnesses. The substance of the plaintiff's testimony was that he stopped some ten feet north of the Stop sign, looked for traffic on the intersecting thoroughfare, saw no such traffic, and proceeded to turn left onto the preferred highway. In his briefs plaintiff acknowledges that his case had to rest on the premise that the circumstances present in this case require the inference that defendant was traveling at a rate of speed greatly in excess of permissible limits. Plaintiff offered no direct evidence as to the defendant's speed. The defendant testified that he was traveling at fifty miles per hour prior to the time he applied his brakes just prior to the collision. In addition, plaintiff had the substantial burden of proving his own due care. It was incumbent upon plaintiff to prove that when he looked and did not see defendant's vehicle, it was because the defendant's automobile could not be seen. In addition, according to his own testimony, the plaintiff stopped his vehicle some ten feet north of the north edge of the pavement of Route 176, which the jury may have concluded did not afford him an opportunity for proper lookout, considering the grade and contour of the intersecting thoroughfare.

Contrary to plaintiff's contention, the testimony of the plaintiff was not clear or uncontradicted. Therefore, cases such as Porter v. Industrial Commission, 352 Ill. 392, Kelly v. Jones, 290 Ill. 375, and Mammina v. Homeland Insurance Co., 371 Ill. 555, are not in point. In those cases where no countervailing or contradictory evidence was offered, it was held that the testimony of witnesses not contradicted by positive testimony or by circumstances and not inherently false

or improbable may not be rejected. Such is not true in the instant case. In Hadley v. White, 367 Ill. 406, also relied upon by plaintiff, the Supreme Court of Illinois affirmed a decree of the chancellor where the chancellor disregarded particular testimony and other evidence which, though uncontradicted by adverse testimony, was impeached by reason of many omissions, discrepancies, and improbabilities. It is not only plain that the Hadley case is not in point here, but an examination of the defendant's testimony does not reveal it to contain such omissions, discrepancies, or improbabilities as to justify a trial judge or reviewing court holding that it must be disregarded by a jury. Tepper v. Campo, 398 Ill. 496, cited by plaintiff, is a case similar to the Hadley case where the Supreme Court affirmed the chancellor's decree where the chancellor concluded that appellant's testimony was so unreasonable and improbable as to be unacceptable, even though uncontradicted.

■ The applicable rule in cases of this kind has been stated and restated by the Supreme Court and Appellate Courts of Illinois. Where disputed questions of fact are presented to a jury and the jury passes upon them, unless such findings of fact are palpably erroneous, they will not be disturbed by a reviewing court, Robinson v. Workman, 15 Ill. App.2d 25, Griggas v. Clauson, 6 Ill.App.2d 412. The negligence of the defendant and the exercise of due care on the part of the plaintiff were proper matters for the jury to determine, and this is not a case in which an opposite conclusion to that of the jury is clearly evident.

For the reasons stated, the judgment of the Circuit Court of McHenry County is affirmed.

Judgment affirmed.

WRIGHT, P. J. and CROW, J., concur.